## UNITED STATES DISTRICT COURT          EASTERN DISTRICT OF TEXAS

BERLINSIA GALLENTINE,            §
                                 §
            Plaintiff,           §
                                 §
*versus*                         §       CIVIL ACTION NO. 1:12-CV-417
                                 §
THE HOUSING AUTHORITY OF THE     §
CITY OF PORT ARTHUR, TEXAS, and  §
SELEDENIO QUESADA,               §
                                 §
            Defendants.          §

### MEMORANDUM AND ORDER

Pending before the court is the Housing Authority of the City of Port Arthur, Texas, (the "Housing Authority") and Seledenio Quesada's ("Quesada") (collectively "Defendants") Motion to Dismiss (#5). Defendants move for dismissal of Plaintiff Berlinsia Gallentine's ("Gallentine") claims for discrimination and retaliation under Title VII, § 1981, and § 1983 on the ground that they are legally and factually infirm. Gallentine opposes Defendants' motion, arguing that her claims are viable. Having considered the instant motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Defendants' motion should be granted in part and denied in part.

I.     Background

This dispute arises out of purportedly racially-motivated employment actions taken by Defendants against Gallentine. Gallentine, a black female, began her employment with the Housing Authority on July 7, 1997. She eventually rose to the position of Housing Counselor and is currently Operations Manager. Problems allegedly arose, however, when the Housing

Authority hired Paula Watts ("Watts"), a Hispanic female.  Gallentine claims that upon the commencement of Watts's employment, Quesada, the Housing Authority's Executive Director and a Hispanic male, has discriminated against Gallentine on the basis of race and retaliated against her for complaining about racial discrimination.

Gallentine's complaint describes several instances where Quesada allegedly treated her less favorably that Watts.  The following are the specific incidents of purportedly discriminatory and retaliatory conduct that, according to the complaint, occurred between 2007 and 2010[1]:

1.  Watts was promoted numerous times ahead of Gallentine despite having less experience and inferior qualifications.  Moreover, Gallentine asserts that many of the jobs to which Watts was promoted were not posted pursuant to the Housing Authority's policies.

2.  Quesada created a new position entitled Client Services Manager specifically for Watts.

3.  On[2] July 27, 2007, Watts received a pay raise but Gallentine did not.

4.  Later, on August 26, 2008, another employee, Anji Johnson ("Johnson") resigned, and Quesada ordered Gallentine to assume Johnson's caseload.

5.  In December 2008, Quesada asked Gallentine to assume Watts's caseload because Watts was overwhelmed.  As a result, Watts was allegedly left with

---

[1] Gallentine does not provide dates for all of these incidents.  Therefore, in describing her factual allegations, the court will follow the order in which they are discussed in her complaint and will specify dates only where Gallentine provides them.

[2] Where a specific date is given for an incident, the complaint uniformly alleges that it occurred "on or about" that date.  For the sake of brevity, the court will simply state that an incident occurred "on" the date specified.

no caseload at all and had no responsibilities other than to oversee the admissions department.  At the same time, Watts was given an assistant, Elaina Lee ("Lee"), a white female, and allowed to hire her daughter, Ciara, to assist her with clerical matters.  Gallentine, however, was not afforded similar benefits.

6. Gallentine requested that Quesada divide or reassign her office work on numerous occasions to alleviate her workload, but he denied her request each time.  According to Gallentine, Quesada, motivated by Gallentine's race, assigned her an unbearable workload in order to force her to quit.

7. On December 16, 2008, Quesada criticized Gallentine for wearing jeans to work in an alleged attempt to embarrass her.  Watts often wore jeans to work but was never criticized or reprimanded for doing so.

8. On January 19, 2009, Quesada directed Gallentine to absorb approximately 100 more cases in addition to Watts's caseload.

9. Gallentine also states that she had never been "written-up" or reprimanded by the Housing Authority during her first thirteen years of her employment.  Although Quesada never personally gave Gallentine a performance evaluation during the time he supervised her, he allegedly verbally criticized and denigrated Gallentine on numerous occasions in front of her fellow co-workers.

10. In January 2010, both Gallentine and Watts were enrolled in college while also continuing to work at the Housing Authority.  Because Gallentine had

to complete an internship during normal work hours, Quesada directed Gallentine to work nights instead.  Quesada permitted Watts, who also required scheduling changes to accommodate the demands of her course work, to work from home.

11.    On September 7, 2010, Gallentine, based on the incidents described above, along with several other employees of the Housing Authority, filed a charge with the Equal Employment Opportunity Commissions ("EEOC").  Gallentine's charge averred that she was treated less favorably than Watts and was subjected to a hostile work environment.

12.    In September 2010, after filing the charge, Gallentine was demoted to the position of Housing Counselor, where she was under the supervision of Lee.

13.    On December 2, 2010, Lee "wrote up" Gallentine concerning a particular client's case without any prior discussion or consultation.  This reprimand was characterized as a verbal warning but was later placed in written form in Gallentine's personnel file.  Gallentine maintains that the warning was given in retaliation for her filing a charge of discrimination with the EEOC and for supporting others with their grievances against the Housing Authority.

In addition to these contentions, Gallentine's complaint includes allegations concerning the internal decision-making structure at the Housing Authority.  She states that the Housing Authority's Personnel Policy Manual describes the duties of an Executive Director as follows:

4

"set policy, establish priorities, goals and objectives for organizational design, job design and restructuring to provide upward mobility and increased job opportunities for minorities, women and handicapped (i.e., part time, entry level, etc.)."  Furthermore, she argues that the Housing Authority is governed by a Board of Commissioners ("Board"), which has delegated to Quesada, in his position as Executive Director, the authority to make policy concerning personnel matters.

Gallentine further alleges that the Board has instituted discriminatory practices, policies, and customs and has adopted or acquiesced in similar practices, policies, and customs instituted by Quesada.  The policies and customs include:  (1) never personally evaluating Gallentine's tenure or job performance; (2) allowing Hispanic employees, but not African-American employees, to hire their family members; (3) promoting Hispanic employees with less experience or training over African-American employees; (4) allowing Hispanic employees to wear types of clothing that African-American employees cannot; (5) failing to enforce departmental policies concerning the posting of job openings; (6) creating new positions for Hispanic employees and not African-American employees; (7) overloading African-American employees with the job responsibilities of Hispanic employees, yet paying Hispanic employees higher wages; and (8) retaliating against African-American employees for filing complaints with the EEOC or participating in an EEOC investigation.

On May 24, 2012, the EEOC issued a right-to-sue letter to Gallentine, indicating that she had a right to file a claim against the Housing Authority within 90 days of the letter's receipt. Thereafter, on August 23, 2012, Gallentine filed the instant complaint against the Housing Authority and against Quesada in his individual capacity, asserting claims under 42 U.S.C. §§ 1981 and 1983, as well as Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§ 2000e, *et seq.*  On September 17, 2012, Defendants filed a motion to dismiss Gallentine's claims on numerous grounds.

## II.   Analysis

### A.   Rule 12(b)(6) Standard[3]

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002).  It is not a procedure for resolving contests about the facts or the merits of a case.  *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE:  CIVIL 2d § 1356, at 294 (1990).  In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1669 (2009); *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *Ramming*, 281 F.3d at 161.  Nevertheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a

---

[3] Defendants allege that Gallentine failed to exhaust her administrative remedies with respect to her Title VII claims.  "It is unclear whether exhaustion of administrative remedies [under Title VII] falls under [Rule] 12(b)(1) or 12(b)(6)."  *Crosby v. Philip Holdings, LLC*, No. H-12-01749, 2012 WL 5456360, at *2 n.5 (S.D. Tex. Nov. 7, 2012) (citing *Pacheco v. Mineta,* 448 F.3d 783, 788 n.7 (5th Cir.), *cert. denied*, 549 U.S. 888 (2006)).  EEOC filing deadlines, however, are not jurisdictional.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).  Defendants' motion requests dismissal of Gallentine's claims under "12(b)(6) and (1)."  Because a decision concerning the exhaustion issue would be the same under either standard, the court will proceed by examining all of Defendants' arguments under the standard established by Rule 12(b)(6).

court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming*, 281 F.3d at 161 (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)).   The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), *cert. denied*, 552 U.S. 1182 (2008).

Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992).   The court may, however, consider matters that are outside the pleadings if those materials are matters of public record. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citing *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995)); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994); *see also* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra*, § 1357, at 299.   The court may also consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).   Moreover, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Twombly*, 550 U.S. at 563).

"'A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted."'" *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (quoting *Collins*, 224 F.3d at 498 (quoting *Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d at 1050)); *accord Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). "'The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'" *Collins*, 224 F.3d at 498 (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra*, § 1357, at 332-36); *accord Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "In other words, a motion to dismiss an action for failure to state a claim 'admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.'" *Ramming*, 281 F.3d at 161-62 (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992)).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

B.     Title VII Claims

Defendants present the following arguments as to why Gallentine's Title VII claims should be dismissed:  (1) Quesada cannot be liable under Title VII because he is not an employer for purposes of Title VII; (2) Gallentine failed to exhaust her administrative remedies as to her discrimination claims; (3) she failed to exhaust her administrative remedies with respect to her retaliation claims; (4) she cannot base her Title VII claims on incidents occurring outside the 300-day period preceding the filing of her EEOC charge; (5) Gallentine has failed to plead a *prima facie* case of disparate treatment; and (6) she has failed to plead a *prima facie* case of retaliation.

1.     Quesada's Status as an "Employer"

Title VII permits employees to sue their employers for discriminatory employment actions. *See Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 205 (1997); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 465 (5th Cir.), *cert. denied*, 534 U.S. 948 (2001); *accord Baldwin v. Layton*, 300 F. App'x 321, 322 (5th Cir. 2008) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003)).  "[I]t is well-settled that an employee-employer relationship is an absolute prerequisite to claims filed pursuant to Title VII."  *Johnson v. Crown Enters., Inc.*, 294 F. Supp. 2d 850, 854 (M.D. La. 2003), *aff'd in part, rev'd in part on other grounds*, 398 F.3d 339 (5th

Cir. 2005); *see also Roque v. Jazz Casino Co. LLC*, 388 F. App'x 402, 405 (5th Cir. 2010); *Deal v. State Farm Cnty. Mut. Ins. Co.*, 5 F.3d 117, 118 n.2 (5th Cir. 1993).

The determination of whether a defendant is an employer under Title VII involves a two-step process. *See Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007); *Deal*, 5 F.3d at 118 n.2. The defendant must meet the statutory definition of an employer, and there must be an employment relationship between the plaintiff and the defendant. *See Muhammad*, 479 F.3d at 380; *Deal*, 5 F.3d at 118 n.2.

Here, Gallentine's claims against Quesada arise solely from his actions as a supervisory employee of the Housing Authority. It is well settled in the Fifth Circuit that individual employees, even those functioning in a supervisory capacity, cannot be held personally liable under Title VII, because they are not "employers," as that term is defined in Title VII. *Umoren v. Plano Indep. Sch. Dist.*, 457 F. App'x 422, 425 (5th Cir. 2012) ("'[R]elief under Title VII is only available against an employer, not an individual supervisor or fellow employee.'" (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003)); *Felton v. Polles*, 315 F.3d 470, 478 (5th Cir. 2002). It is equally clear under Fifth Circuit precedent that a Title VII plaintiff may not recover against a public employee in his individual capacity. *See Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998); *Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990); *accord Felton*, 315 F.3d at 478. While Title VII's definition of the term employer includes "any agent" of an employer, the Fifth Circuit does not interpret the statute as imposing individual liability for such a claim, concluding that Congress's purpose was merely to import *respondeat superior* liability into Title VII. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) (citing *Indest*, 164 F.3d at 262); *see also Baldwin*, 300 F. App'x at 322 (stating that the Fifth

10

Circuit has "repeatedly rejected any individual liability under Title VII") (citing *Ackel*, 339 F.3d at 382 n.1; *accord Upchurch v. City of Moss Point*, No. 1:10-CV-228, 2011 WL 5082224, at *3-4 (S.D. Miss. Oct. 26, 2011) (dismissing former police officer's Title VII claims against several municipal employees, including police chief, and reasoning that such individuals were not "employers" for purposes of the statute); *Preacely v. City of Houston*, No. H-10-0492, 2010 WL 1903754, at *1 (S.D. Tex. May 11, 2010) (dismissing individual city employees as defendants in Title VII case); *Pena v. City of Colony*, No. 4:08-CV-50, 2008 WL 4642256, at *1 (E.D. Tex. Oct. 8, 2008) (same). Hence, "the term 'employer' does not include a hiring or supervisory official in his personal or individual capacity." *Huckabay*, 142 F.3d at 241.

Quesada is the Executive Director of the Housing Authority and Gallentine's supervisor. Therefore, he does not meet the statutory definition of "employer," and Gallentine's Title VII claims against him are dismissed.

2.   <u>Exhaustion of the Disparate Treatment Claim</u>

Defendants claim that Gallentine has failed to include in her EEOC charge some of the incidents mentioned in her complaint and, therefore, has failed to exhaust all of her claims. "Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (citing *Pacheco*, 448 F.3d at 788). It is well settled that courts may not entertain claims brought under Title VII as to which an aggrieved party has not first exhausted her administrative remedies by filing a charge of discrimination with the EEOC. *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012); *McClain*, 519 F.3d at 273; *Taylor v. Books A Million*, 296 F.3d 376, 378-79 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003); *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998); *Barnes*

11

*v. Levitt*, 118 F.3d 404, 408-09 (5th Cir. 1997), *cert. denied*, 523 U.S. 1136 (1998); *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995); *see also* 42 U.S.C. § 2000e-5(e)(1).  While not uniformly viewed as a jurisdictional prerequisite, the filing of an EEOC charge "'is a precondition to filing in district court.'"  *Taylor*, 296 F.3d at 379 (quoting *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863 (5th Cir. 1983))).

The primary purpose of the EEOC charge is to provide notice to the respondent of the discrimination alleged and to activate the voluntary compliance and conciliation functions of the EEOC.  *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir.), *cert. denied*, 540 U.S. 1107 (2004); *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 577-78 (5th Cir. 1993); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).  The charge triggers an investigation by the EEOC so, through a conciliation process, voluntary compliance may be obtained and discriminatory practices and policies eliminated.  *See Barnes*, 118 F.3d at 409; *EEOC v. Hearst Corp.*, 103 F.3d 462, 464 (5th Cir. 1997).  Requiring the plaintiff first to state her allegations of employment discrimination in an EEOC charge serves "Congress' intention to promote conciliation rather than litigation in the Title VII context."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998).

Civil complaints filed under Title VII may only encompass discrimination "'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'"  *McClain*, 519 F.3d at 273 (quoting *Sanchez*, 431 F.2d at 466); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994); *see Dollis*, 77 F.3d at 781; *Fine*, 995 F.2d at 578.  Accordingly, the scope of the complaint

is limited to "'the discrimination stated in the charge itself or developed in the course of a reasonable [EEOC] investigation of that charge.'" *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 712 (quoting *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)); *see Pacheco*, 448 F.3d at 789-90; *Thomas v. Tex. Dep't of Crim. Justice*, 220 F.3d 389, 395 (5th Cir. 2000). Thus, the failure to assert a claim of discrimination in an EEOC charge and/or its lack of development in the course of a reasonable investigation of that charge precludes the claim from later being brought in a civil suit. *See Thomas*, 220 F.3d at 395; *Nat'l Ass'n of Gov't Emps.*, 40 F.3d at 711-12; *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *Sanchez*, 431 F.2d at 465-66. Several district courts have applied these principles to disallow a variety of claims not raised in the EEOC charge. *See*, *e.g.*, *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 490 (5th Cir. 2010) (affirming district court's ruling that certain claims were unexhausted where plaintiffs failed to either check the appropriate box or describe the discriminatory conduct in the charge); *Butler v. Shinseki*, No. 10-0857, 2011 WL 3419619, at *6 (E.D. La. Aug. 4, 2011) (dismissing racial discrimination claim that was not alleged in the EEOC charge); *Harvill v. Westward Commc'ns, LLC*, 311 F. Supp. 2d 573, 585 (E.D. Tex. 2004) (refusing to allow a constructive discharge claim that was not asserted in the EEOC charge).

Here, Gallentine's EEOC charge states the following:

I.      . . . Ms. Watts has been allowed to have a significantly lower case load than I have by our supervisor, Cele [sic] Quesada, Executive Director. Ms. Watts is also paid a higher salary than I am making although I have more tenure with the organization and more education than Ms. Watts. Mr. Quesada has created a hostile work environment[4] in the organization against me by ridiculing me and falsely accusing me of having performance issues.

---

[4] The instant complaint does not allege, however, that Defendants created a hostile work environment.

13

II.      Mr. Quesada suggests as a justification for my having a case load and Ms. Watts basically not having one is that he pays me more money than the case workers.  Mr. Quesada has not given me any reasons why he continually ridicules me and denigrates my performance to the other staff.

III.     I believe I am being discriminated against based on my race, Black, in violation of Title VII . . . .

In addition, she checked the box next to race discrimination and alleged that the discrimination occurred between August 3, 2009, and September 7, 2010.  She also checked the box next to "continuing violation."  These allegations of race discrimination in the charge and those in her complaint are generally similar.  She claims to have been discriminated on the basis of her race in both documents.  In addition, Gallentine mentions the unfavorable treatment she allegedly received as compared to Ms. Watts in both filings as well as the criticism and ridicule she purportedly experienced.  These similarities are sufficient to demonstrate that Gallentine has exhausted her administrative remedies with respect to her racial discrimination claim.  Therefore, the allegations in the EEOC charge are sufficiently related to the allegations in the complaint to allow Gallentine to state a Title VII claim for race discrimination.

### 3.      Exhaustion of Retaliation Claims

Defendants further allege that because Gallentine did not check the box next to retaliation or allege retaliation in her charge, she has failed to exhaust her retaliation claims administratively.  Nevertheless, it is well established that when a retaliation claim grows out of a properly filed employment discrimination charge, it is not necessary for a plaintiff to file a second charge specifically alleging retaliation.  *See Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (holding "[i]t is the nature of retaliation claims that they arise after the filing of an EEOC charge"); *see also Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007) (recognizing the

14

"*Gupta* exception")[5]; *Thompson v. Origin Tech. in Bus. Inc.*, No. 3:99-CV-2077-L, 2001 WL

1018748, at *9-10 (N.D. Tex. Aug. 20, 2001) (finding the court may consider a retaliation claim

that arose in response to the plaintiff's EEOC charge).  According to Gallentine, she was demoted

shortly after filing the charge and was written up a few months later.  Under the exception in

*Gupta*, she was not required to file a second EEOC charge based on these incidents.  Accordingly,

Defendants' motion to dismiss on this ground is denied.

### 4.    Application of Title VII Filing Deadline

A separate but related issue is whether Gallentine may base her discrimination claims on

events that occurred outside the 300-day statutory filing period for Title VII claims.  In Texas,

because there is a state agency with the authority to grant or seek relief for discriminatory

employment practices, in order to maintain a Title VII claim, a plaintiff must file her charge of

discrimination with the EEOC within "three hundred days after the alleged unlawful employment

practice occurred."  42 U.S.C. § 2000e-5(e)(1); *Lewis v. City of Chicago*, ___ U.S. ___, ___, 130

S. Ct. 2191, 2196-97 (2010); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 623-24

(2007), *superseded in part by statute on other grounds*, Lilly Ledbetter Fair Pay Act of 2009, Pub.

L. No. 111-2, 42 U.S.C. § 2000e-5(e)(3); *Morgan*, 536 U.S. at 109; *Frank v. Xerox Corp.*, 347

F.3d 130, 136 (5th Cir. 2003).  Generally, the limitations period begins on the date the

discriminatory act occurred, and a plaintiff cannot sustain her claims based on incidents that

occurred more than 300 days before the filing of a charge of discrimination.  *Ledbetter*, 550 U.S.

---

[5] The court is mindful that in an unpublished opinion, the Fifth Circuit suggested but declined to address whether the "*Gupta* exception" had been abrogated by the Supreme Court's holding in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  *See Sapp v. Potter*, 413 F. App'x 750, 752 n.2 (5th Cir. 2011).  In the absence of binding authority from the Fifth Circuit recognizing the abrogation of the *Gupta* exception, the court will continue to apply it.

at 623-24; *Morgan*, 536 U.S. at 110; *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 549 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1285 (2010); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997), *cert. denied*, 525 U.S. 1167 (1999).

Here, Gallentine filed her charge of discrimination with the EEOC on September 7, 2010. She bases her Title VII claims in part on discriminatory acts that took place before November 11, 2009, 300 days before she filed her charge.  When considering whether discriminatory acts that fall outside the limitations period are actionable under Title VII, the United States Supreme Court has distinguished claims alleging discrete discriminatory acts from those alleging a hostile work environment.  *Ledbetter*, 550 U.S. at 638; *Morgan*, 536 U.S. at 110; *see also Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).

In *Morgan*, the United States Supreme Court noted that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  536 U.S. at 110.  "A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it."  *Id*.; *accord Ledbetter*, 550 U.S. at 647; *Pegram*, 361 F.3d at 279.  Certain discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire, are "easy to identify."  *Morgan*, 536 U.S. at 114; *accord Ledbetter*, 550 U.S. at 647; *Pegram*, 361 F.3d at 280 n.5.  Although not an exhaustive list, each discrete act "constitutes a separate actionable unlawful employment practice."  *Morgan*, 536 U.S. at 114; *Pegram*, 361 F.3d at 280 n.5.

"[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Morgan*, 536 U.S. at 113; *accord Pegram*, 361 F.3d at 279; *Mack v. John L. Wortham & Son, L.P.*, No. H–10–4881, 2012 WL 5456117, at *5 (S.D.

16

Tex. Nov. 7, 2012). Hence, "claims based on discrete acts are timely only where such acts occurred within the limitations period." *Pegram*, 361 F.3d at 279 (citing *Morgan*, 536 U.S. at 113); *Mack*, 2012 WL 5456117, at *5. Moreover, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113; *accord Pegram*, 361 F.3d at 279; *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 836 F. Supp. 2d 443, 451 (S.D. Miss. 2011). Any act occurring outside the applicable filing period "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977); *accord Morgan*, 536 U.S. at 112; *Ramsey v. Henderson*, 286 F.3d 264, 270 (5th Cir. 2002); *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 n.12 (5th Cir. 1995). "[C]urrent effects alone cannot breathe life into prior, uncharged discrimination." *Ledbetter*, 550 U.S. at 619; *Garcia v. Brockway*, 526 F.3d 456, 463 (9th Cir.), *cert. denied*, 555 U.S. 1069 (2008).

The Fifth Circuit has "recognized what is called a 'continuing violation theory' in the context of determining whether a Title VII claim is time-barred." *Vidal v. Chertoff*, 293 F. App'x 325, 327 (5th Cir. 2008) (citing *Huckabay*, 142 F.3d at 238). This doctrine "is limited in three ways." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). "First, the plaintiff must demonstrate that the 'separate acts' are related, or else there is no single violation that encompasses the earlier acts." *Id.* (citing *Morgan*, 536 U.S. at 118). "Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window." *Stewart*, 586 F.3d at 328 (citing *Morgan*, 536 U.S. at 118). "Third, the

17

continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement." *Stewart*, 586 F.3d at 328 (internal quotations omitted).

In the case at bar, Gallentine argues that the continuing violation theory applies and that actions occurring outside the relevant statutory period may be included in this court's analysis. Specifically, "a persisting and continuing system of discriminatory practices in promotion or transfer produces effects that may not manifest themselves as individually discriminatory, except in cumulation over a period of time." *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 402 (5th Cir. 1983)). Accordingly, "[t]he continuing violation theory can relieve a plaintiff of showing that all of the defendant's conduct occurred within the prescription period, but only if the plaintiff can show 'a series of related acts, one or more of which falls within the limitations period.'" *Montgomery v. Louisiana ex rel. La. Dep't of Pub. Safety & Corrs.*, No. 01-31458, 2002 WL 1973820, at *2 (5th Cir. Aug. 2, 2002) (quoting *Messer*, 130 F.3d at 134-35).

The continuing violation doctrine encompasses only those acts that form part of the same pattern or policy of discrimination that gives rise to the relevant Title VII claims. *Morgan*, 536 U.S. at 117; *Pegram*, 361 F.3d at 279; *Felton*, 315 F.3d at 485. "The doctrine '"requires the *same type* of discriminatory acts to occur both inside and outside the limitations period," such that a valid connection exists between them.'" *Felton*, 315 F.3d at 485 (emphasis in original) (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001) (quoting *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000))). "Although there is no definitive standard for what constitutes a continuing violation, the plaintiff must demonstrate more

18

than a series of discriminatory acts.  He must show an organized scheme leading to and including a present violation." *Huckabay*, 142 F.3d at 239; *see Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349-50 (5th Cir. 2010) (citing *Celestine*, 266 F.3d at 352; *Berry v. Bd. of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983), *cert. denied*, 479 U.S. 868 (1986)); *Abner v. Kan. City S. R.R. Co.*, 513 F.3d 154, 167 n.67 (5th Cir. 2008); *Butler v. MBNA Tech., Inc.*, 111 F. App'x 230, 232 (5th Cir. 2004), *cert. denied*, 544 U.S. 965 (2005).  "[I]t is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay*, 142 F.3d at 239; *see Morgan*, 536 U.S. at 118; *Messer*, 130 F.3d at 135; *Glass*, 757 F.2d at 1561.  "The end goal of the continuing violation theory is to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period'" and then "'all of the discriminat[ory] acts committed as part of this pattern or policy can be considered timely.'" *Pegram*, 361 F.3d at 279 (quoting *Celestine*, 266 F.3d at 351-52); *see also Yerby v. Univ. of Houston*, 230 F. Supp. 2d 753, 761-62 (S.D. Tex. 2002).

Application of this theory relieves a plaintiff from the burden of proving that the entire violation occurred within the limitations period, as long as she can show that at least one of the alleged discriminatory acts arose within 300 days of her EEOC charge.  *See Morgan*, 536 U.S. at 117; *Pegram*, 361 F.3d at 279; *Huckabay*, 142 F.3d at 238 (citing *Messer*, 130 F.3d at 135).  Because "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." *Morgan*, 536 U.S. at 118.

The Fifth Circuit has adopted a multi-factor test to assess whether a continuing violation is implicated. *See Celestine*, 266 F.3d at 351; *Huckabay*, 142 F.3d at 239; *Berry*, 715 F.2d at 981. These factors include subject matter, frequency, and permanence:

> This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged facts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry*, 715 F.2d at 981; *see Butler*, 111 F. App'x at 232 (citing *Huckabay*, 142 F.3d at 239); *Celestine*, 266 F.3d at 351; *Upshaw v. Bd. of Supervisors of S. Univ. & Agric. Coll.*, No. 10-184, 2011 WL 2970950, at *4 (M.D. La. July 19, 2011); *Dickey v. Northrop Grumman Ship Sys., Inc.*, No. 1:06-CV-781, 2007 WL 4365338, at *6 (S.D. Miss. Dec. 7, 2007). "Importantly, however, the particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula." *Huckabay*, 142 F.3d at 239 (citing *Berry*, 715 F.2d at 981); *Dickey*, 2007 WL 4365338, at *6.

"'The core idea [of the continuing violation theory] is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated.'" *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 877 (5th Cir. 2010) (quoting *Glass*, 757 F.2d at 1560-61); *accord Abrams v. Am. Airlines Inc.*, 302 F. App'x 242, 244 (5th Cir. 2008). "'The focus is on what event, in fairness and logic, should have alerted the average

lay person to act to protect his rights.'" *Roberts*, 405 F. App'x at 877 (quoting *Glass*, 757 F.2d at 1561); *see also Abrams*, 302 F. App'x at 244; *Messer*, 130 F.3d at 135; *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 534 (5th Cir. 1986). The Fifth Circuit has cautioned that "[t]his 'theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of statutes of limitation in Title VII cases.'" *Merriman v. Potter*, 251 F. App'x 960, 965 (5th Cir. 2007) (quoting *Abrams*, 805 F.2d at 533).

In analyzing the permanence factor, the court examines whether a discrete event triggered a duty of the plaintiff to assert her rights. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir. 1989). Basically, permanence is an inquiry into what the plaintiff knew or should have known at the time of the discriminatory act. *See Sabree v. United Bhd. of Carpenters & Joiners*, 921 F.2d 396, 402 (1st Cir. 1990). If a plaintiff knows or with the exercise of reasonable diligence would have known that she suffered from discrimination, she "may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993). Thus, as the First Circuit has noted:

> A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.

*Sabree*, 921 F.2d at 402; *Martin v. Frank*, 788 F. Supp. 821, 826 (D. Del. 1992). The Fifth Circuit has recognized that "[a]cts of harassment that create an offensive or hostile work environment generally do not have the same degree of permanence as, for example, the loss of promotion." *Waltman*, 875 F.2d at 476; *see also West v. Philadelphia Elec. Co.*, 45 F.3d 744,

21

755-56 (3d Cir. 1995).   In the latter example, there is an element of permanence to the discriminatory action that should, in most cases, alert a plaintiff that her rights have been violated. *See Stair v. Lehigh Valley Carpenters Local Union No. 600*, 813 F. Supp. 1112, 1116 (E.D. Pa. 1993).

In the instant action, Gallentine argues that the continuing violation theory applies but does not discuss it in any detail.  Importantly, Gallentine does not assert a hostile work environment claim under Title VII in her complaint, although she alluded to a "hostile work environment" in her EEOC charge.  In general, the continuing violation doctrine "is limited to hostile environment claims." *Lee v. City of Corpus Christi*, 749 F. Supp. 2d 521, 531 (S.D. Tex. 2010); *Bashiri v. Alamo Cmty. Coll. Dist.*, No. SA–07–cv–1028, 2009 WL 299228, at *2 (W.D. Tex. Sept. 16, 2009) ("[T]he continuing violation doctrine is applicable only to hostile work environment claims.").  The applicability of the doctrine to other types of claims in this circuit is doubtful.  *See Moini v. Univ. of Tex. at Austin*, No. A-10-CA-180-AA, 2011 WL 90472, at *7-8 (W.D. Tex. Jan. 10, 2011) (stating that *Morgan* divided Title VII claims into three separate categories:  (1) those based on discrete acts; (2) those based on hostile work environment; and (3) those based on pattern-or-practice); *but see Nwakanma v. Novelli*, No. 4:10–cv–1128, 2011 WL 5006521, at *4 (S.D. Tex. Oct. 20, 2011) (denying a motion to dismiss on the grounds that "failures to promote and to give performance evaluations were continuing violations insofar as they were part of an organized scheme").

In the absence of a hostile work environment claim, the court declines to apply the continuing violation theory.  Instead, the court views Gallentine's complaint as challenging a series

of discrete acts.  For example, her complaint alleges that she failed to receive promotions despite being better qualified than Watts.  Failure to promote is specifically mentioned in *Morgan* as a discrete act.  536 U.S. at 114.  Likewise, the remaining incidents described in her complaint constitute discrete acts, which are separately actionable, and may not be pursued outside the relevant limitations period.  *See Peanick v. Morris*, 96 F.3d 316, 322 (8th Cir. 1996); *Bowers v. Edgewood Indep. Sch. Dist.*, No. Civ. A. SA05CA404XR, 2005 WL 2648332, at *6 (W.D. Tex. Oct. 4, 2005); *Victor v. Runyon*, No. Civ. A. 96-5711, 1997 WL 461562, at *1 n.2 (E.D. Pa. July 31, 1997), *aff'd*, 151 F.3d 1027 (3d Cir. 1998); *see also Huckabay*, 142 F.3d at 240; *Stephans v. Miss. Univ. for Women*, No. Civ. A. 1:04-CV-226, 2005 WL 3591812, at *2 (N.D. Miss. Dec. 30, 2005) (citing *Morgan*, 536 U.S. at 114); *Brown v. Farmers Ins. Exch.*, No. Civ. A. SA02CA1032-XR, 2004 WL 952396, at *3 (W.D. Tex. May 3, 2004).[6]  Therefore, Gallentine cannot maintain a Title VII discrimination claim based on incidents that occurred before November 11, 2009.  Those events may be considered, however, as relevant background information with regard to her other timely claims.  *Stewart*, 586 F.3d at 333.

---

[6] It is worth noting that several of these otherwise time-barred incidents most likely do not amount to adverse employment actions.  *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) ("Imposing a higher workload than that given to other employees is not an adverse employment action under [T]itle VII." (citing *Benningfield v. City of Houston*, 157 F.3d 369, 376–77 (5th Cir. 1998))); *Fortenberry v. Texas*, 75 F. App'x 924, 927 (5th Cir. 2003) (holding that neither being "unfairly reprimanded for wearing jeans to work" nor being "verbally mistreated" are the sort of ultimate employment decisions that qualify as adverse employment actions).  The Fifth Circuit continues to hold that with respect to discrimination claims, adverse employment actions include only ultimate employment decisions.  *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 456 n.2 (5th Cir. 2011); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (reasoning that the Supreme Court's holding in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) applies only to retaliation claims).

5.    *Prima Facie* Case of Discrimination

Defendants also assert that Gallentine's Title VII claims should be dismissed because her complaint fails to set forth a *prima facie* case of racial discrimination.

Title VII cases are not subject to a heightened pleading standard.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Harvey v. M.L. Smith, Jr., Inc.*, No. 07-1379, 2008 WL 2282178, at *2 (W.D. La. Apr. 29, 2008); *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 661 (E.D. Tex. 2008).  The Supreme Court has made it clear that a plaintiff in an employment discrimination case need not plead a *prima facie* case in her complaint.  *See Swierkiewicz*, 534 U.S. at 508.  "Rather, a plaintiff need only follow Rule 8's command that a complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Kelso v. Paulson*, No. 3:08–CV–0961–B, 2009 WL 972997, at *6 (N.D. Tex. Apr. 9, 2009) (quoting FED. R. CIV. P. 8(a)(2)).  "Rule 8 thus sets out a 'low bar' to evaluate the sufficiency of a claim, requiring only that a plaintiff's pleadings '"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."'"  *Gilbert v. Outback Steakhouse of Fla. Inc.*, 295 F. App'x 710, 713 (5th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396 (5th Cir. 2005) (quoting *Swierkiewicz*, 534 U.S. at 512)).  At the pleading state, Gallentine "need only allege enough facts to plausibly suggest that [her] employer discriminated against [her] due to [her] membership in a protected group."  *Johnson v. Alice Indep. Sch. Dist.*, No. C-12-170, 2012 WL 4068678, at *3 (S.D. Tex. Sept. 14, 2012) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Swierkiewicz*, 534 U.S. at 511-12).

24

"The Court may, however, *consider* the elements set forth in *McDonnell Douglas* in its analysis." *Johnson*, 2012 WL 4068678, at *3 (citing *Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009)) (emphasis added).  To establish a *prima facie* case of disparate treatment under the *McDonnell Douglas* framework, Gallentine must show that:

    (1)      she is a member of a protected class;

    (2)      she is qualified for the position;

    (3)      she suffered an adverse employment action; and

    (4)      others outside the class who were similarly situated were treated more favorably than she.

*Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007); *see Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 339 (5th Cir. 2005); *Laxton v. Gap Inc.*, 333 F.3d 572, 579 n.1 (5th Cir. 2003); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

Of course, the *McDonnell Douglas* framework is an "evidentiary standard, not a rigid pleading requirement." *Puente*, 324 F. App'x at 427.  Nevertheless, courts have followed the decision in *Puente* by dismissing claims on the grounds that they could not plausibly support one or more elements of a *prima facie* case under Title VII.  *See, e.g.*, *Monson v. Jazz Casino Co., LLC*, No. 11-2716, 2012 WL 3138047, at *3 (E.D. La. Aug. 1, 2012) (dismissing Title VII claim because "mere failure to provide information regarding a vacant position" is not an adverse employment action); *Teamer v. Napolitano*, No. H-11-1801, 2012 WL 1551309, at *10 (S.D. Tex. May 1, 2012 (dismissing Title VII claim where the only employee mentioned as a possible comparator was in no way similarly situated); *see also EEOC v. Bass Pro Outdoor World*, *LLC*,

No. 4:11–cv–03425, 2012 WL 1965685, at *12-13 (S.D. Tex. May 31, 2012) ("Courts reconcile [*Swierkewicz*, *Twombly*, and *Iqbal*] by explaining that plaintiffs need not establish every element of their prima facie case, but must nonetheless state a plausible claim for relief under the pleading standard set forth in *Twombly* and *Iqbal*."). In other instances, courts have been wary to dismiss the action at the pleading stage. *See Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008) (stating that consideration of the *McDonnell Douglas* elements is proper if "a plaintiff asserts circumstantial evidence of discrimination and then affirmatively defeats his own claim by admitting that he cannot later meet his burden" while implying it is improper in other factual settings); *see also Kelso*, 2009 WL 972997, at *6 ("Meritless claims should be dealt with on summary judgment, not a motion to dismiss, because the 'issue is not whether the [plaintiff] will ultimately prevail[,] but whether the [plaintiff] is entitled to offer evidence in support of the claim [.]'" (quoting *Swierkewicz*, 534 U.S. at 511)).

Here, Defendants argue that, even accepting Gallentine's properly filed and exhausted allegations as true, she cannot possibly recover on her Title VII discrimination claim because she did not suffer an adverse employment action nor was she treated less favorably than a similarly situated employee outside her class. The court is not convinced that dismissal is proper on the ground that Gallentine has failed to show that she is similarly situated to an employee who was treated more favorably. Her complaint discusses Watts's employment in detail and states that Watts is "no more qualified" than Gallentine for her position at the Housing Authority, suggesting that their backgrounds are comparable, although Gallentine appears to have longer tenure. Also, the complaint can be fairly read to imply that Watts and Gallentine shared a supervisor. In fact,

the EEOC charge refers to Quesada as both Watts's and Gallentine's supervisor.  In light of these allegations, and given the intense factual inquiry required to determine whether employees are similarly situated, the court declines to dismiss Gallentine's Title VII claim on this ground.  *See, e.g.*, *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893-96 (5th Cir. 2012) (stating that the inquiry into whether an employee is similarly situated requires an examination of whether "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.").

Nevertheless, the only discriminatory incident alleged in the complaint that is both exhausted and timely is the January 2010 scheduling-related incident, in which Gallentine was purportedly not permitted to work from home while Watts was.[7]  That incident cannot plausibly qualify as an adverse employment action.   *Pegram*, 361 F.3d at 282 ("[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action.") (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.), *cert. denied*, 540 U.S. 817 (2003)); *see also Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001) ("[A] shift change, without more, is not an adverse employment action."); *Johnson v. Tune*, No. 4:10-cv-124, 2011 WL 3299927, at *4 (E.D. Tex. Apr. 29, 2011) (holding that the "decision to deny Plaintiff weekends off is not enough to allege an adverse employment action sufficient to state an actionable claim"); *Benningfield*, 157 F.3d at 377 (holding that changes in work hours are not adverse employment actions).  Therefore, Gallentine's complaint does not state

---

[7] The September 2010 demotion and the December 2010 retaliatory "write-up," both of which occurred after the filing of the EEOC charge, are considered separately below.

27

a plausible claim of racial discrimination under Title VII because she has not alleged any discriminatory acts which are exhausted, timely, and could plausibly qualify as an adverse employment action.

### 6.    *Prima Facie* Case of Retaliation

Defendants also urge the court to dismiss Gallentine's retaliation claims related to the September 2010 demotion and the December 2010 "write-up" because she has not pleaded a *prima facie* case of retaliation under Title VII.  To establish a *prima facie* case of retaliation, a plaintiff must show:

> (1)    she engaged in statutorily protected activity under Title VII;
>
> (2)    action was taken by the employer against the plaintiff that a reasonable employee would consider materially adverse; and
>
> (3)    a causal connection exists between the protected activity and the adverse action.

*See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012); *Taylor v. United Parcel Serv.*, 554 F.3d 510, 523 (5th Cir. 2008); *McCoy*, 492 F.3d at 556-57, 559; *Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Defendants dispute only Gallentine's ability to satisfy the last two prongs of the *prima facie* case of Title VII retaliation.  The third prong, causation, is adequately satisfied at the pleading stage because Gallentine has alleged that the demotion and "write-up" were caused by her filing a charge with the EEOC.[8]  The second element of a *prima facie* case requires a plaintiff to show

---

[8] In fact, the close proximity between the filing of the charge and the demotion is sufficient to establish this element of a *prima facie* case.  "'[A] time lapse of up to four months . . . [is] sufficient to

28

that she was subjected to a materially adverse action by the employer. *See White*, 548 U.S. at 68; *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005). "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67. The Supreme Court repudiated the Fifth Circuit's former requirement that, to be deemed an adverse employment action, a retaliatory action must involve an ultimate employment decision such as hiring, granting leave, discharging, promoting, or compensating. *See id.* at 67-68; *see, e.g., Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). Under the standard articulated in *White*, a plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005))). The provision's standard for judging harm, which refers to the reactions of a reasonable employee is, by necessity, objective. *See id.* The new standard is intended to "prevent employer interference with 'unfettered access' to Title VII remedial mechanisms" and to encompass situations involving conduct objectively "likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* (citations omitted). The court noted that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* (citation omitted).

---

satisfy the causal connection for summary judgment purposes.'" *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

Here, the September 2010 demotion may have dissuaded a reasonable employee from complaining about discrimination. *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 631 (5th Cir. 2011). The write-up, however, which was classified as a verbal warning, cannot satisfy the second prong of a *prima facie* case of retaliation. *King v. Louisiana,* 294 F. App'x 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation"); *Grice v. FMC Techs., Inc.,* 216 F. App'x 401, 407 (5th Cir. 2007) (holding that unjustified reprimands are considered "trivial" and not materially adverse in the retaliation context); *DeHart v. Baker Hughes Oilfield Operations, Inc.,* 214 F. App'x 437, 442 (5th Cir. 2007) (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination"). Therefore, the Court denies Defendants' motion to dismiss Gallentine's Title VII retaliation claim based on the alleged demotion.

C.      § 1981 Claims

Defendants contend that Gallentine cannot maintain an independent cause of action under 42 U.S.C. § 1981 because that statute applies only to private actors, not to municipalities. The Civil Rights Act of 1866, 42 U.S.C. § 1981, provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  "Section 1981 provides that all persons in the United States shall have the same contractual rights as 'white citizens.'"  *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) (citing 42 U.S.C. § 1981(a)).  More specifically, § 1981 states that every person in the United States shall have the same rights as white citizens regarding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."  42 U.S.C. § 1981(b); *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 359 (5th Cir.), *cert. denied*, 540 U.S. 1035 (2003); *Felton*, 315 F.3d at 479-80; *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1049 (5th Cir. 1998).  Section 1981 further provides that these rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. § 1981(c); *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 n.2 (2004); *Felton*, 315 F.3d at 480.  Hence, § 1981 prohibits racial discrimination, both public and private, in the making or enforcement of contracts.  *See Olmstead v. Zimring*, 527 U.S. 581, 617 n.1 (1999); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987); *Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441-43 (1968); *Felton*, 315 F.3d at 480.  Congress initially enacted § 1981 as part of the Civil Rights Act of 1866 pursuant to § 2 of the Thirteenth Amendment of the United States Constitution.  *See Edwards v. Jewish Hosp. of St. Louis*, 855 F.2d 1345, 1348 (8th Cir. 1988).  "'The legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of

rights, specifically defined in terms of racial equality.'" *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 384 (1982) (quoting *Georgia v. Rachel*, 384 U.S. 780, 791 (1966)).

Section 1981 was amended by the Civil Rights Act of 1991, which added subsections (b) and (c). *See Felton*, 315 F.3d at 480; *accord Foley*, 355 F.3d at 339. Subsection (b) defines the term "make and enforce contracts," as follows:

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b). Subsection (c) clarifies the scope of the statute's protection:

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(c). This amendment was "'designed to restore and strengthen civil rights laws that ban discrimination in employment.'" *Fadeyi*, 160 F.3d at 1050 (quoting H.R. Rep. No. 102-40(II), 102d Cong., 1st Sess., at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 694). "As a general matter, section 1981 serves as a deterrent to employment discrimination and a means of punishing employers who discriminate on the basis of race. Section 1981 also provides a means of compensating a victim of racial discrimination." *Carroll v. Gen. Accident Ins. Co. of Am.*, 891 F.2d 1174, 1176 (5th Cir. 1990).

In order to establish a claim under § 1981, it must be shown that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin*

& *Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *see Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d, 288-89 (5th Cir. 2004); *Felton*, 315 F.3d at 483 (citing *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994) (citing *Mian*, 7 F.3d at 1087)).  Liability cannot be imposed under § 1981 absent proof of purposeful discrimination.  *See Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 390; *Arguello*, 207 F.3d at 809 n.9; *Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 536 (9th Cir. 1982).

A public sector employee, however, cannot assert a viable § 1981 claim against a state entity or state actor independent of § 1983.  The Fifth Circuit, relying on Supreme Court authority, has held "that § 1981 [does] not provide a separate cause of action against local government entities."  *Oden*, 246 F.3d at 462 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36 (1989)); *see Felton*, 315 F.3d at 481; *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 341 n.16 (5th Cir. 2002), *cert. denied*, 537 U.S. 1108 (2003).  Instead, "plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981."  *Oden*, 246 F.3d at 463 (citing *Jett*, 491 U.S. at 735-36); *accord Felton*, 315 F.3d at 481.  In *Jett*, the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."  491 U.S. at 733; *accord Felton*, 315 F.3d at 481-82; *Oden*, 246 F.3d at 462-64.  The Supreme Court further broadened the language in the opinion to include all state actors, holding that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is

pressed against a state actor." *Jett*, 491 U.S. at 735 (quoting 42 U.S.C. § 1983); *see also Felton*, 315 F.3d at 481-82.  Thus, "'[t]he Supreme Court did not make a distinction between state entities and individuals acting pursuant to color of state law.'" *Felton*, 315 F.3d at 482 (quoting *Ebrahimi v. City of Huntsville Bd. of Educ.*, 905 F. Supp. 993, 996 (N.D. Ala. 1995)); *Jett*, 491 U.S. at 735.

In *Felton* and *Oden*, the Fifth Circuit recognized that *Jett* remains controlling law on this issue despite the changes to § 1981 effected by the Civil Rights Act of 1991.  *See Felton*, 315 F.3d at 481; *Oden*, 246 F.3d at 463-64; *see also McCall v. Dallas Indep. Sch. Dist.*, 169 F. Supp. 2d 627, 639-40 (N.D. Tex. 2001).  Moreover, the Fifth Circuit observed that "requiring § 1981 claims against state actors to be pursued through § 1983 is not a mere pleading formality," noting that "[a]lthough *respondeat superior* liability may be available through § 1981, it is *not* available through § 1983."  *Felton*, 315 F.3d at 482 (citations omitted) (emphasis in original).

Thus, despite her argument to the contrary, Gallentine has no independent cause of action against Defendants under 42 U.S.C. § 1981.  Instead, she must assert a cause of action under § 1983 to remedy alleged violations of § 1981.  Gallentine's independent § 1981 claims against Defendants are dismissed.

D.    § 1983 Claims

Defendants also cite numerous grounds for dismissing Gallentine's § 1983 claims against Quesada in his individual capacity and against the Housing Authority:  (1) Title VII is Gallentine's exclusive remedy for employment discrimination and retaliation; (2) the complaint fails to state a plausible § 1983 claim against the Housing Authority; (3) the complaint fails sufficiently to

allege Quesada's personal involvement in the alleged discrimination and retaliation; and (4) the complaint fails to overcome Quesada's qualified immunity.

        1.    Viability of § 1983 Claims in the Employment Discrimination Context

Defendants assert that Gallentine cannot state a § 1983 claim because Title VII is her exclusive remedy for the discrimination and retaliation she allegedly suffered.  Specifically, they contend that because all of Gallentine's claims are based on facts alleging discrimination or violations of the Equal Protection Clause,[9] they must be pursued through Title VII.  Although allowing a plaintiff to pursue a separate claim for a violation of a constitutional or statutory right is proper, "[a]llowing a plaintiff to state a discrimination claim under § 1983 as well would enable him to sidestep the detailed and specific provisions of Title VII."  *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996).  Nevertheless, "even if a plaintiff alleges the same conduct for both Title VII and § 1981 claims, he or she may seek redress under both statutes, as long as the conduct violates both Title VII and a separate constitutional or statutory right."  *Evans*, 246 F.3d at 356 n.9; *accord Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565 (5th Cir. 1989), *cert. denied*, 493 U.S. 1019 (1990).  The holding in *Evans* applies with equal force to § 1983 claims.  246 F.3d at 356 n.9.

Gallentine's complaint appears to state that her § 1983 claim is brought to remedy Defendants' violations of § 1981.  Moreover, her response clarifies that her § 1983 claim against Defendants is being brought for a violation of her rights to make and enforce contracts under § 1981.  *See, e.g.*, *Knox v. City of Monroe*,  551 F. Supp. 2d 504, 512 (W.D. La. 2008) (noting

---

[9] Despite Defendants' contention, neither the complaint nor Gallentine's response to the instant motion mentions the Equal Protection Clause.

that "§ 1983 is the vehicle through which [claims under § 1981] are asserted" against a municipality). She has therefore alleged a violation of a separate statutory right apart from Title VII. Thus with respect to this ground for dismissal, Defendants' motion is denied.

2.    Pleading Requirements for § 1983 Claims Against the Housing Authority

Defendants also argue that Gallentine has failed adequately to state a plausible claim for relief against the Housing Authority. When suit is brought against a municipality or other governmental entity, a plaintiff in a civil rights action need no longer satisfy a heightened standard of pleading. *See Swierkiewicz*, 534 U.S. at 513-14; *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," such as Rule 9(b)'s requirements governing averments of fraud or mistake and statutorily imposed pleading requirements. *Swierkiewicz*, 534 U.S. at 513. A "short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a)(2), will suffice. FED. R. CIV. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz*, 534 U.S. at 513 (quoting *Conley*, 355 U.S. at 47).

Here, the complaint generally gives the Housing Authority fair notice of the nature of Gallentine's claims. Gallentine has alleged the existence of several policies or customs that promote favorable treatment of Hispanic employees over black employees. She has further pleaded that those policies caused the discrimination and retaliation that she faced. Similar allegations have been found sufficient to state a § 1983 claim. *See Swierkiewicz*, 534 U.S. at 513; *Buchanek v. City of Victoria*, No. V-08-08, 2008 WL 4093623, at *9-10 (S.D. Tex. Aug. 28,

2008) (stating that "'[b]oilerplate' allegations of inadequate municipal policies or customs generally suffice"); *see also Allen v. City of Galveston*, No. G-06-467, 2007 WL 996628, at *2 (S.D. Tex. Mar. 30, 2007) (denying motion to dismiss where plaintiffs alleged "official policies, de facto policies, and/or customs that require police officers to show unqualified support for other officers" despite doubts whether plaintiffs could ultimately prevail); *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 988 (E.D. Tex. 2005) (denying motion to dismiss where plaintiff's petition alleged a "pattern of widespread abuse . . . in the use of force generally, and taser guns in particular, against black citizens" even though the complaint was "devoid of specific factual allegations that support the claim"); *but cf. Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011) (requiring plaintiffs, at the motion to dismiss stage, to show "more than boilerplate allegations but not demanding specific facts that prove the existence of a policy"). Therefore, Gallentine has adequately pleaded a § 1983 claim against the Housing Authority.

### 3.   Pleading Requirements for § 1983 Claims Against Quesada in his Individual Capacity

On the other hand, to state a claim against Quesada, an individual defendant under § 1983, Gallentine must allege facts demonstrating Quesada's participation in the alleged wrong. *See Roberts v. City of Shreveport*, 397 F.3d 287, 291-92 (5th Cir. 2005); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *Murphy v. Keller*, 950 F.2d 290, 292 (5th Cir. 1992) ("a plaintiff bringing a section 1983 action must specify the personal involvement of each defendant"); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. L.A. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897 (1983) (citing *Rizzo v. Goode*, 423 U.S.

362, 371-72, 377 (1976) (affirmative link needed between injury and conduct of defendant));
*accord Hamilton v. Foti*, 372 F. App'x 480, 486 (5th Cir. 2010).  Hence, to avoid dismissal, the
complaint must contain facts indicating that the defendant was personally involved in the civil
rights violation.  *See Pechon v. La. Dep't of Health & Hosps.*, 368 F. App'x 606, 610 (5th Cir.
2010); *Anderson*, 184 F.3d at 443; *Murphy*, 950 F.2d at 292; *Hatch v. Abramson*, No. Civ. A.
3:01-CV-0376M, 2002 WL 493027, at *9 (N.D. Tex. Mar. 29, 2002).  In order to satisfy this
requirement, the plaintiff must allege either that the defendant "was personally involved in the acts
causing the deprivation of his constitutional rights or that a causal connection exists between an
act of the [defendant] and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345,
346 (5th Cir. 1981); *accord Pechon*, 368 F. App'x at 610; *Anderson*, 184 F.3d at 443; *Okwilagwe
v. Dallas Cnty. Jail Nurse Station*, No. Civ. A. 3:01-CV-1845-P, 2001 WL 1577435, at *2 (N.D.
Tex. Dec. 6, 2001).

In this case, the court interprets Gallentine's complaint as alleging that Quesada violated
her rights under § 1981 both by discriminating and retaliating against her.  *See CBOCS West, Inc.
v. Humphries*, 553 U.S. 442, 446, 456 (2008) (holding that § 1981 encompasses both retaliation
and discrimination claims).  Gallentine has sufficiently alleged Quesada's personal involvement
in the purportedly discriminatory acts described in Gallentine's complaint.  Her complaint
mentions numerous acts he personally carried out, including failing to promote Gallentine, forcing
her to absorb Watts's caseload, and denying her opportunities for a more flexible work schedule.
Gallentine has therefore sufficiently pleaded Quesada's personal involvement in the alleged
discrimination.

Nevertheless, Gallentine has failed to plead Quesada's personal involvement in the retaliatory actions that took place after she filed her EEOC charge.  Her complaint states only that she was demoted, but it does not specify who demoted her.  There are also no facts demonstrating Quesada's involvement in the December 2010 "write-up" because her complaint alleges only that she was written up by Lee but does not connect that act to Quesada in any way.  Accordingly, the court will dismiss Gallentine's § 1983 claim against Quesada to the extent it relies on the September 2010 demotion and the December 2010 write up.

        4.   <u>Qualified Immunity</u>

Quesada further asserts that he is entitled to qualified immunity from Gallentine's § 1983 claim brought against him in his individual capacity.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818 (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978)); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)); *accord Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012); *Stotter v. Univ. of Tex. at San Antonio*, 508  F.3d 812, 823 (5th Cir. 2007).  "An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity."  *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998) (citing *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992)); *see also Beltran v. City of El Paso*, 367 F.3d 299, 302-03 (5th Cir. 2004).

> The qualified or "good faith" immunity doctrine was established to reconcile two competing interests.  One interest is the compensation of persons whose federally

> protected rights have been violated.  Opposing this is the fear that personal liability
> will inhibit public officials in the discharge of their duties.  Qualified immunity has
> therefore been recognized to protect "all but the plainly incompetent or those who
> knowingly violate the law."

*Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Malley v. Briggs*, 475

U.S. 335, 341 (1986)).

Qualified immunity is available to defendant officials in suits arising under § 1983 and is

an immunity from suit, extending beyond a defense to liability to include all aspects of civil

litigation, including discovery.  *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.

2002), *cert. denied*, 537 U.S. 1232 (2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 840

(5th Cir. 1998); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *see also Mitchell v. Forsyth*,

472 U.S. 511, 526 (1985).  "Qualified immunity is 'an entitlement not to stand trial or face the

other burdens of litigation.'"  *McCully*, 406 F.3d at 380 (quoting *Mitchell*, 472 U.S. at 526); *see*

*Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003).

Because it is "an affirmative defense, the defendant must both plead and establish his

entitlement to immunity."  *Tamez*, 118 F.3d at 1091 (citing *Gomez v. Toledo*, 446 U.S. 635, 640

(1980); *Cronen*, 977 F.2d at 939); *see Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Harlow*, 457

U.S. at 815.  "'Although nominally an affirmative defense, the plaintiff has the burden to negate

the defense once properly raised.'"  *Poole v. City of Shreveport*,  691 F.3d 624, 627 (5th Cir.

2012) (citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008)).  "When a public official

pleads the affirmative defense of qualified immunity in his answer, the district court may, on the

official's motion or on its own, require the plaintiff to reply to that defense in detail."  *Schultea*

*v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).  In the context of a motion to dismiss, however,

40

"if the pleadings on their face show an unreasonable violation of a clearly established constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6)." *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000) *overruled on other grounds by McClendon*, 305 F.3d at 329.  Here, the court finds that Gallentine has adequately briefed the issue of qualified immunity in her response to Defendants' motion to dismiss.  As a result, a separate *Schultea* reply would only duplicate the briefing already before the court and would not be helpful to resolve the issue of qualified immunity.  *See Batiste*, 421 F. Supp. 2d at 979-80 ("The court's discretion not to order such a reply is 'narrow indeed' *when a reply would be of assistance in resolving the issue of qualified immunity.*" (quoting *Schultea*, 47 F.3d at 1434)) (emphasis added).

"Whether a government official is entitled to qualified immunity 'generally turns on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Johnston*, 14 F.3d at 1059 (quoting *Tex. Faculty Ass'n v. Univ. of Tex. at Dallas*, 946 F.2d 379, 389 (5th Cir. 1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987))); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Siegert*, 500 U.S. at 231; *Mitchell*, 472 U.S. at 530; *Harlow*, 457 U.S. at 818; *Stotter*, 508 F.3d at 823; *Atteberry*, 430 F.3d at 253.  A defendant "is entitled to qualified immunity unless he violated a constitutional right that was clearly established at the time of his conduct." *Blackwell v. Barton*, 34 F.3d 298, 302-03 (5th Cir. 1994) (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)); *see Saucier*, 533 U.S. at 201; *Stotter*, 508 F.3d at 823; *Stidham v. Tex. Comm'n*

*on Private Sec.*, 418 F.3d 486, 490 (5th Cir. 2005); *Tarver v. City of Edna*, 410 F.3d 745, 750

(5th Cir. 2005).

> In considering a claim of qualified immunity, the court must utilize a bifurcated approach:
>
> To determine whether a defendant is entitled to qualified immunity, [the] court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred.

*Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007); *accord Easter*, 467

F.3d at 462; *Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005); *Tarver*, 410 F.3d at 750;

*Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 613-14 (5th Cir. 2004), *cert. denied*, 544

U.S. 1062 (2005).  "The first prong requires the plaintiff to allege 'the deprivation of an *actual*

constitutional [or statutory] right.'" *Hampton*, 480 F.3d at 363 (emphasis and alteration in

original) (quoting *Felton*, 315 F.3d at 477).   "For the second prong, by contrast, 'the

right . . . alleged to [have] been violated must have been 'clearly established' in a more

particularized, and hence more relevant, sense:  The contours of the right must be sufficiently

clear that a reasonable official would understand that what he is doing violates that right.'" *Id.*

(alterations in original) (quoting *Felton*, 315 F.3d at 478); *see also Brosseau*, 543 U.S. at 198-99;

*Anderson*, 483 U.S. at 640; *Stotter*, 508 F.3d at 823; *Atteberry*, 430 F.3d at 256.  The question

of whether an officer's conduct was objectively reasonable in light of clearly established law is a

matter of law for the courts to determine.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736

(5th Cir. 2000).  "The touchstone of this inquiry is whether a reasonable person would have

believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Id.*

Regarding the first prong, Defendants do not appear to dispute that Gallentine's rights under § 1981 and Title VII are clearly established. In any case, the right to be free from racial discrimination and retaliation is clearly established under those statutes. *See CBOCS West, Inc.*, 553 U.S. at 446; *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997); *Garner v. Giarrusso*, 571 F.2d 1330, 1338 (5th Cir. 1978). Instead, Defendants argue that Gallentine has not sufficiently alleged a constitutional or statutory violation, echoing their arguments concerning Gallentine's alleged failure to plead a *prima facie* case of discrimination and retaliation. The court will not consider the alleged retaliation because she has failed to satisfy the pleading burden with respect to that claim against Quesada. The question therefore becomes whether Gallentine has sufficiently alleged a violation of § 1981. As mentioned above, in order to establish a claim under § 1981, it must be shown that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian*, 7 F.3d at 1087. Accepting the facts in the complaint as true, the court finds that Gallentine has alleged a violation of § 1981. She is a member of a racial minority, and she alleges that Quesada purposefully discriminated against her because of her race. Moreover, she alleges that the discrimination directed toward her affected benefits and privileges of her employment contract with the Housing Authority. For instance, her complaint details the

alleged disparate treatment Gallentine received on account of her race, including her failure to receive a promotion and being denigrated by Quesada.  These allegations are sufficient to state a claim against Quesada under § 1981.

As for the second prong, "'if reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.'"  *Blackwell*, 34 F.3d at 303 (quoting *Pfannstiel*, 918 F.2d at 1183); *accord Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Southard*, 114 F.3d at 550); *Johnston*, 14 F.3d at 1059; *see also Malley*, 475 U.S. at 341; *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir. 1996).  "The second prong 'focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place.'"  *Felton*, 315 F.3d at 478  (quoting *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997)).  "A 'defendant's acts are . . . objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff.'"  *Id*. (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001) (emphasis in original)).

Although Quesada is entitled to qualified immunity if reasonable officials could disagree as to the legality of his actions at the time of the incident, the underlying factual disputes are still resolved in favor of Gallentine, the nonmoving party.  *See McClendon*, 305 F.3d at 323 (noting that at the motion to dismiss stage, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'" (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996))); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 449-50 (5th Cir. 1998); *see also*

*Anderson*, 483 U.S. at 640-41.  Quesada contends that his actions were objectively reasonable and that Gallentine has failed to point to facts showing that his conduct was unreasonable.  Because all factual disputes must be resolved in favor of Gallentine, however, the court finds that no reasonable official could have believed that racially-motivated discrimination in employment was proper at the time the alleged incidents took place.  *Blackwell v. Laque*, 275 F. App'x 363, 367-68 (5th Cir. 2008); *Murphy v. State of Ark.*, 127 F.3d 750, 755-56 (8th Cir. 1997).  Therefore, Quesada is not entitled to rely on the defense of qualified immunity at this juncture.[10]

D.     Availability of Punitive Damages

Defendants seek to dismiss Gallentine's request for punitive damages for violation of § 1983.  Punitive damages against a municipality and other governmental entities are not recoverable under § 1983.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

---

[10] Ultimately, both the Title VII claims and the § 1983 claims will be subject to similar evidentiary burdens.  *Southard*, 114 F.3d at 554.  Nevertheless, the outcomes vary at the pleading stage because the statutes of limitation are different, allowing the court to consider certain acts for the § 1983 claims that it cannot consider for the Title VII claims.

Currently, there is some doubt in the Fifth Circuit as to whether a § 1983 claim asserting rights under § 1981(b) is governed by a two- or four-year statute of limitation.  *Compare Lee*, 749 F. Supp. 2d at 533-34 *with Mitchell*, 265 F. App'x at 368 (citing *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 382 (2004)); *Thomas v. City of Shreveport*, No. 06-1078, 2008 WL 4291211, at *4-5 (W.D. La. Sept. 15, 2008), *aff'd sub nom. Thomas v. Kent*, 401 F. App'x 864 (5th Cir. 2010); *and Knox*, 551 F. Supp. 2d at 511; *see also Moore v. City of Jackson*, No. 3:10cv454-DPJ-FKB, 2011 WL 3022525, at *2 n.2 (S.D. Miss. July 22, 2011) (listing other decisions within the Fifth Circuit applying the four-year statute of limitations).  In *Baker v. Birmingham Board of Education*, the only published circuit court opinion addressing the issue, the Eleventh Circuit held that the four-year statute of limitations applies to § 1983 claims asserting violations of § 1981(b).  531 F.3d 1336, 1338 (11th Cir. 2008).  Moreover, decisions in other courts have also applied the four-year statute of limitations in those situations.  *See DeNigris v. N.Y. City Health & Hosps. Corp.*, 861 F. Supp. 2d 185, 191 (S.D.N.Y. 2012); *Robinson v. City of Ark. City*, No. 10-1431-JAR, 2012 WL 3834731, at *18 (D. Kan. Sept. 4, 2012).  In accordance with these authorities, the court applies the four-year statute of limitations.  Therefore, the court will consider only allegedly discriminatory and retaliatory incidents that occurred after August 23, 2008, four years before the instant complaint was filed, when evaluating Gallentine's § 1983 claims.

Such damages are, however, recoverable against a defendant sued in his individual capacity. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010). Because Gallentine is suing Quesada in his individual capacity, she may be able to recover punitive damages from him. Thus, the court grants Defendants' motion to dismiss Gallentine's punitive damages claims against the Housing Authority alone.

E.      Opportunity to Amend

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to refiling); *accord Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991).

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.

*Neitzke*, 490 U.S. at 329-30.

Where, however, a claim is frivolous or the "complaint alleges the plaintiff's best case," a further factual statement from the plaintiff need not be allowed. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999); *see Neitzke*, 490 U.S. at 327-28; *Hart*, 199 F.3d at 248 n.6. Moreover, when the plaintiff declares the sufficiency of her pleadings and makes no attempt to amend her

46

complaint in response to the defendant's challenge pursuant to Rule 12(b)(6), dismissal is proper

when the plaintiff's allegations fail to state a claim for which relief can be granted. *See Rosenblatt*

*v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Spiller v. City of Tex. City*,

130 F.3d 162, 167 (5th Cir. 1997).  In addition, a plaintiff should not be granted leave to amend

after being afforded repeated opportunities to do so.  *See Torch Liquidating Trust ex rel. Bridge*

*Assoc. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009) (finding that plaintiff had ample

opportunity to cure noted defects through a prior amendment); *United States ex rel. Adrian v.*

*Regents of the Univ. of Cal.*, 363 F. 3d 398, 404 (5th Cir. 2004) (noting that "pleading review is

not a game where the plaintiff is permitted to file serial amendments until he finally gets it right");

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir.

2003) (holding leave to amend was properly denied where the relator had previously filed two

amended complaints).  Furthermore, "where a proposed amendment would be a futile act, a court

does not abuse its discretion in denying leave to amend." *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-

1174-G, 2007 WL 2410007, at *3 (N.D. Tex. Aug. 23, 2007) (citing *Forman v. Davis*, 371 U.S.

178, 182 (1962)).

　　　"'Whether leave to amend should be granted is entrusted to the sound discretion of the

district court.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir.), *cert.*

*denied*, 537 U.S. 1044 (2002) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499

(5th Cir. 1998)).  "Federal Rule of Civil Procedure 15(a) requires the trial court to grant leave to

amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'"

*Id.* (quoting *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982),

47

*cert. denied*, 464 U.S. 814 (1983)); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) ("[T]here is a strong presumption in favor of granting leave to amend . . . ."). A district court may, however, refuse leave to amend if the complaint as amended would be subject to dismissal. *Ackerson*, 589 F.3d at 208; *see Yee v. Baldwin-Price*, 325 F. App'x 375, 380 (5th Cir. 2009) ("Leave to amend may be denied on the basis of futility.").

Here, the court finds that because an amendment could cure several defects, Gallentine should be granted leave to amend. She may clarify the following issues with respect to her Title VII discrimination claims: (1) the specific dates on which certain incidents occurred; and (2) whether she is alleging a hostile work environment claim. With respect to her § 1983 claims, she may specify whether Quesada was involved in the demotion or write-up that occurred after she filed her EEOC charge.

III.    Conclusion

Based on the foregoing analysis, Defendants' motion is granted in part and denied in part. The court finds that Gallentine's independent claims under § 1981 and her Title VII claims against Quesada in his individual capacity fail as a matter of law and that leave to amend would be futile. Therefore, these claims are dismissed with prejudice. The court is of the opinion, however, that Gallentine has alleged a sufficient factual basis for her Title VII retaliation claim against the Housing Authority, her § 1983 discrimination and retaliation claims against the Housing Authority, and her § 1983 discrimination claim against Quesada in his individual capacity. Quesada's attempted reliance on qualified immunity with respect to Gallentine's § 1983 discrimination claim is rejected. Finally, the court finds that Gallentine has failed to alleged

sufficient facts in her complaint to state a Title VII discrimination claim against the Housing Authority or a § 1983 claim for retaliation against Quesada.  Because it appears, however, than an amendment could potentially cure some of the defects in Gallentine's complaint, Gallentine may file an amended complaint repleading her claims for discrimination under Title VII against the Housing Authority and retaliation under § 1983 against Quesada in his individual capacity with the requisite particularity no later than fourteen (14) days from the date of this order.  If she fails to do so, these claims will be dismissed with prejudice.

      SIGNED at Beaumont, Texas, this 18th day of January, 2013.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE